**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arthur Truman Thomas, | No. CV 07-2104-PHX-FJM (ECV) |
| Plaintiff, | **ORDER** |
| vs. | |
| Joseph Arpaio, et al. | |
| Defendants. | |

Plaintiff Arthur Truman Thomas filed this civil rights action under 42 U.S.C. § 1983 against Maricopa County Sheriff Joseph Arpaio, Detention Officer Nyakondo, and Officer Harring. (Doc. #1.) Defendants move to dismiss on the grounds that (1) as to Counts I, II, and III, Plaintiff failed to exhaust his administrative remedies, (2) as to Count III, Plaintiff cannot demonstrate deliberate indifference to his medical care, and (3) as to all Counts, Plaintiff cannot prove that Arpaio is responsible in either his personal or official capacity.[1] (Doc. #12.) The matter is fully briefed. (Doc. ##22, 25.)

In addition, Plaintiff moves to strike the Motion to Dismiss and for summary judgment. (Doc. #15, and contained in #22.) Plaintiff's motions to strike Defendants' motion are denied. The Court has already granted Defendants' request to suspend the

---

[1] The Court sent the Notice required under Wyatt v. Terhune, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003). (Doc. ##13, 19.)

deadline to file a response to Plaintiff's summary judgment motion until 30 days after a ruling on the pending motion to dismiss. (Doc. #24.) We now grant the motion to dismiss and therefore deny the summary judgment motion as moot.

## I. Background

Plaintiff raised three counts in his Complaint. In Count I, Plaintiff alleged that he was handcuffed and in leg-irons at the courthouse when Harring grabbed Plaintiff by the throat, forced him backwards and against a wall, grabbed him by the hair and jerked his head up and back, and yelled at Plaintiff and insulted him. In Count II, Plaintiff alleged that he was forced to spend several hours, on multiple occasions, in a holding cell that had "cock-roaches everywhere." In Count III, Plaintiff asserted that Nyakondo ignored Plaintiff's requests for a medical "tank order" so that Plaintiff could see medical personnel about his abscessed teeth and the severe pain in his gums, delaying Plaintiff's dental care.

Plaintiff asserted that the acts in the three counts are "in accordance with [Maricopa County Sheriff's Office] policies, practices, customs [and] procedures" and are "in compliance with guidelines written and authorized by [Defendant] Arpaio." He also asserted that Arpaio knew about his staff's actions and had not taken steps to prevent those actions. The Court directed Arpaio, Harring, and Nyakondo to answer the Complaint and dismissed the remaining defendant.

## II. Motion to Dismiss

### A. Counts I and II

#### 1. Legal Standard—Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not bring a lawsuit with respect to prison conditions under § 1983 unless all available administrative remedies are exhausted. See 42 U.S.C. § 1997e(a); Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006); Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005). He must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 126 S. Ct. 2378, 2384 (2006). Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless the type of relief offered through the

1 administrative process, <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001).

2 Exhaustion is an affirmative defense. <u>Jones v. Bock</u>, 127 S. Ct. 910, 919-21 (2007).
3 Defendant bears the burden of raising and proving the absence of exhaustion. <u>Wyatt v.
4 Terhune</u>, 315 F.3d 1108, 1119 (9th Cir. 2003). Because exhaustion is a matter of abatement
5 in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide
6 disputed issues of fact. <u>Id.</u> at 1119-20. Further, a court has broad discretion as to the method
7 to be used in resolving the factual dispute. <u>Ritza v. Int'l Longshoremen's Union</u>, 837 F.2d
8 365, 369 (9th Cir. 1988) (quotation omitted).

**2.    Count I**

**a.    Parties' Contentions**

11 Defendants contend that Plaintiff failed to exhaust his administrative remedies as
12 required by the PLRA, 42 U.S.C. § 1997e(a). (Doc. #12.) In support, Defendants submit the
13 affidavit of Susan Fisher, a Sergeant assigned to the Inmate Hearing Unit. (<u>Id.</u>, Ex. 1, Fisher
14 Aff. ¶ 1.) Fisher attests that her duties include receipt, processing, tracking, and storage of
15 inmate grievances. (<u>Id.</u> ¶ 2.) The grievance procedure at the jail is a three-tiered system that
16 includes (1) the initial grievance and decision by a Bureau Hearing Officer, (2) the
17 Institutional appeal, and (3) the External appeal. (Doc. #12, Ex. A, MCSO Inmate Grievance
18 Procedure Policy DJ-3.) Fisher asserts that the jail's grievance policy does not restrict the
19 type of issues that an inmate may grieve. (<u>Id.</u> ¶ 3.) She further attests that according to the
20 Sheriff's Office records, although Plaintiff filed a grievance regarding the alleged altercation
21 with Harring, the grievance was resolved at the shift supervisor level. (Fisher Aff. ¶ 8.)
22 Plaintiff did not pursue the grievance further by filing an Institutional appeal or appealing to
23 the External Referee. (<u>Id.</u> ) Defendants also submit the MCSO Rules and Regulations for
24 Inmates and a sample Inmate Grievance Form. (<u>Id.</u>, Exs. B, C.)

25 Plaintiff asserts that he filed a grievance on September 24, 2007, but he was not
26 questioned about this incident until October 31, 2007. (Doc. #22 at 4.) At that time,
27 Sergeants Morrison and McWilliams coerced Plaintiff into signing a form that states that the
28 grievance was resolved by a promise to investigate the matter to completion and to take

- 3 -

1 proper action. (Id., Ex. A.) Plaintiff notes that he crossed out the "informally resolved"
2 language on the form. (Id.) He alleges that, later that day, he realized the two sergeants had
3 "coerced him to sign-off under duress." (Id. at 5.) So he filed another grievance and asked
4 that it be sent to the hearing officer. (Id.) That grievance was returned with instructions to
5 re-write it. (Id.) Plaintiff wrote another grievance but never received an answer. (Id.)

6 In their reply, Defendants argue that the additional grievances provided by Plaintiff
7 post-date the filing of the Complaint and demonstrate that Plaintiff failed to exhaust his
8 administrative remedies before bringing this action. (Doc. #25 at 2-3.)

9 **b.     Analysis**

10 Defendants have met their burden to show that Plaintiff failed to exhaust
11 administrative remedies regarding his claim of excessive force by Harring. Even if Plaintiff
12 exhausted his remedies, the evidence shows that he did not do so before bringing this lawsuit.

13 The PLRA mandates that an inmate exhaust remedies *before* filing a lawsuit;
14 exhausting remedies during the course of the lawsuit does not comply with the requirement.
15 McKinney v. Carey, 311 F.3d 1198, 1120-21 (9th Cir. 2002). The statute itself states that
16 "[n]o action shall be brought . . . until [the prisoner's] administrative remedies . . . are
17 exhausted." 42 U.S.C. § 1997e(a). In addition, requiring dismissal where the inmate fails
18 to exhaust before filing provides a strong incentive that will promote the congressional
19 objectives behind the exhaustion requirement—affording officials time and opportunity to
20 address complaints internally, filtering out frivolous claims, and developing an administrative
21 record. McKinney, 311 F.3d at 1200-01. See also Holcomb v. Fleeman, 2007 WL 3231588,
22 at *2 (E.D. Cal. 2007) (inmate's concession that he did not obtain a Director's level decision
23 until after the lawsuit was filed "is fatal to his action") (citing Woodford, 126 S. Ct. at 2383;
24 McKinney, 311 F.3d at 1199-1201).

25 Defendants provide evidence that an initial grievance was filed on September 24,
26 2007, and that on October 31, Plaintiff did not ask that it be forwarded to the hearing officer
27 as a formal grievance. Although Plaintiff argues that prison officials coerced him into a
28 resolution, he does not explain how they did so; he provides no specific allegations of

1 conduct by Morrison and McWilliams. This is insufficient to show that prison officials 2 prevented Plaintiff from using the grievance system. See Brown, 422 F.3d at 937 3 (information provided to the prisoner is pertinent to the issue of the availability of an 4 administrative remedy); see also Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) 5 (a remedy that prison officials prevent a prisoner from using is not an "available" remedy 6 under §1997e). More importantly, Plaintiff filed his Complaint on October 22, 2007,[2] well 7 before any alleged coercion to resolve his grievance. (Doc. #1.) Plaintiff does not dispute 8 that he did not pursue the grievance appeal process prior to that time. The Grievance 9 Procedure permits an inmate to submit a grievance directly to the hearing officers if he has 10 not received a written response in four calendar days after submitting a grievance to a shift 11 supervisor. (Doc. #12, Ex. A at 8.)

12 And although Plaintiff filed two more grievances on this matter—October 31 and 13 November 11—both grievances were filed after Plaintiff filed his federal action. Plaintiff's 14 claim that a sergeant told him that filing the Institutional appeal on November 27, 2007, 15 exhausted his remedies is unavailing. (Doc. #22 at 6.) Even if that were correct, which does 16 not appear to be the case under the Grievance Procedure, Plaintiff must exhaust his remedies 17 before filing his civil rights case. Count I is dismissed.

18     **3.    Count II**
19         **a.    Parties' Contentions**

20 Fisher attests that Plaintiff filed no grievances as to unsanitary conditions. (Fisher 21 Aff. ¶ 7.) In his response, Plaintiff submits evidence that on October 11, 2007, he submitted 22 a grievance complaining that on August 24, he was placed in a holding cell with hundreds 23 of cockroaches and that he was again placed in the holding cell on September 24. (Doc. #22, 24 Ex. B.) He submitted a Grievance appeal on November 14, 2007. (Id.) He also submitted 25 an External Grievance appeal on November 18. (Id.)

---

27 [2] Under the "prison mailbox rule," a complaint is deemed "filed" when handed by the 28 prisoner to a prison official for mailing. See Houston v. Lack, 487 U.S. 266, 270-71 (1988); Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th Cir. 2003).

In their reply, Defendants acknowledge Plaintiff's initial grievance on unsanitary conditions but note that it was untimely and so he received no response. (Doc. #25 at 5.) They also note that Plaintiff filed an Institutional appeal on November 14, which was approximately 16 days after Plaintiff filed his lawsuit. (Id.) Plaintiff then filed an External Referee appeal on November 18, also after the filing of the lawsuit. (Id.) Thus, Defendants contend that Plaintiff did not exhaust his administrative remedies regarding unsanitary conditions prior to filing his lawsuit.

    **b.**  **Analysis**

For the reasons discussed concerning Count I, Defendants have met their burden to show that Plaintiff failed to exhaust his administrative remedies as to Count II prior to filing his case in federal court. The Court will dismiss Count II without prejudice.

   **B.**  **Count III and Defendant Arpaio**

    **1.**  **Parties' Contentions**

Defendants argue that Plaintiff fails to establish deliberate indifference regarding the alleged delay in receiving medical care and that Plaintiff fails to state a claim against Arpaio. (Doc. #12 at 7-12.) First, Defendant claims that Plaintiff fails to show deliberate indifference because Plaintiff was actively treated on several occasions for his abscessed teeth and his gum pain. (Id. at 8.) They also assert that there is no evidence of harm as a result of any delay. They refer to the report of the External Referee, which shows that Plaintiff was seen at the clinic a day after his medical request for treatment of tooth pain and he did not complain of pain. (Id., Ex. 2.) Plaintiff also fails to show that the delay caused harm because the External Referee Report notes that the American Medical Association no longer recommends routine antibiotics before dental procedures except for patients at the highest level of risk for bacterial endocarditis. (Id.)

Next, Defendants assert that Plaintiff makes only conclusory allegations that unconstitutional acts were in accordance with policies, practices, and customs of Arpaio. (Id. at 10.) And they argue that Plaintiff fails to state a claim against Arpaio for his official conduct because he fails to show that Arpaio participated in creating a dangerous condition

1 and acted with deliberate indifference to a known danger. (Id. at 11.)

2 In response, Plaintiff asserts that Count III is about Nyakondo's deliberate
3 indifference to Plaintiff's medical needs when Nyakondo walked away from Plaintiff and
4 would not bring him a tank order to request dental care for his abscessed tooth. (Doc. #22
5 at 7-8.) Plaintiff asserts that there was delay in treatment and that a 14-day waiting time is
6 too long. (Id. at 9.) As to Arpaio, Plaintiff argues that the Court has already determined that
7 the Complaint states a claim, and he points to Defendants' argument that Plaintiff was seen
8 within 14 days and that this is "within the general time frame provided by dental." (Id. at
9 12.) Plaintiff asserts that Arpaio made that policy, custom or procedure. (Id. at 13.)

10 In their reply, Defendants argue that Plaintiff did not exhaust his administrative
11 remedies as to Count III because he did not specify that his grievance was about being
12 ignored by Nyakondo and, in the Complaint, Plaintiff failed to answer the question about
13 exhausting his remedies. (Doc. #25 at 6-7.) They also assert there is no record of Plaintiff
14 filing a grievance regarding Nyakondo. (Id. at 7.)

15 **2. Analysis**

16 The Court will dismiss Count III. Plaintiff's Complaint survived the initial screening
17 pursuant to 28 U.S.C. § 1915A(b)(1). (See Doc. #3.)  However, pursuant to 29 U.S.C.
18 § 1915(e)(2), -(B)(ii), we shall dismiss *at any time* a case that fails to state a claim upon
19 which relief can be granted. We now conclude that the Complaint fails to state a claim,
20 partly for failure to exhaust administrative remedies.

21 In his response brief, Plaintiff asserts that Count III is about Nyakondo's deliberate
22 indifference when Nyakondo walked away without providing a tank order. (Doc. #22 at 7-
23 8.) However, there was nothing in Plaintiff's grievance about this incident; therefore, he has
24 not exhausted administrative remedies with regard to this allegation. In any event, according
25 to Plaintiff's allegations, a medical tank order was brought to Plaintiff "about an hour or two
26 later" by a different officer. (Doc. #1 at 5A). A delay of an hour or two in responding to a
27 non-urgent medical request does not amount to a constitutional violation.

28

The remainder of count three, expressed in Plaintiff's complaint and response alleges that dental staff delayed too long to treat Plaintiff after he submitted the tank order. But Plaintiff did not exhaust his administrative remedies with regard to this allegation. After all, Plaintiff wrote the complaint only five days after submitting the tank order. (Doc. #1 at 5A).

**ACCORDINGLY, IT IS HEREBY ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn.

(2) Defendants' Motion to Dismiss (Doc. #12) is **granted** for failure to exhaust administrative remedies.

(3) Plaintiff's Motions to Strike (Doc. #15, and contained in #22) are **denied**, and Plaintiff's Motions for Summary Judgment (Doc. #15, and contained in #22) are **denied** on grounds of mootness.

DATED this 18th day of September, 2008.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge